# ROBINSON *v.* BALTIMORE AND OHIO RAILROAD COMPANY.

## ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF WEST VIRGINIA.

No. 17. Submitted April 28, 1911.—Decided January 9, 1912.

By the Act to Regulate Commerce, Congress has provided a system for establishing, maintaining, and altering rate schedules and of redressing injuries, and committed to a single tribunal authority to investigate complaints, enforce conformity to prescribed standards, and order reparation to injured parties for non-conformity with those standards.

No action for reparation for exactions for railroad freight payments can be maintained in any court, Federal or state, in the absence of an appropriate finding and order of the Interstate Commerce Commission. The rule laid down in *Texas & Pacific Railway Co.* v. *Abilene Oil Co.*, 204 U. S. 426, as to suits for recovery of unreasonable rates, applies also to suits for recovery of rates as discriminatory.

Section 14 of the Act to Regulate Commerce, making decisions of the Interstate Commerce Commission as published in the official reports competent evidence, does not relieve a party relying on a decision from putting it in evidence—or require courts to take judicial notice thereof—the statute relieves from expense and inconvenience in connection with producing evidence, but it does not otherwise change the rules of evidence.

In this case *held* that an action could not be maintained for discriminatory exaction on coal rates of fifty cents a ton when loaded from wagons and not from tipples, as the complaint had not shown that the schedule had been the subject of complaint to the Interstate Commerce Commission and held by it to be discriminatory.

64 W. Va. 406, affirmed.

THE facts, which involve the validity of charges of common carriers on coal shipments and whether illegal discrimination existed, are stated in the opinion.

*Mr. Charles H. Leeds* for plaintiff in error.

*Mr. H. L. Bond, Jr., Mr. W. Irvine Cross* and *Mr. A. Hunter Boyd, Jr.,* for defendant in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

In February, March and May, 1903, Robinson, the plaintiff in error, shipped eleven carloads of coal from Fairmont, West Virginia, to points in other States, over the railroad of the Baltimore and Ohio Railroad Company, the defendant in error, and paid the rate thereon which was prescribed in a schedule published and filed conformably to the act to regulate interstate commerce and then in full force. By this schedule the rate was fifty cents more per ton when the coal was loaded into the car from wagons than when the loading was from a tipple. Robinson's shipments came under the higher rate, and the charges paid by him were $150.00 in excess of what would have been exacted if his coal had been loaded from a tipple. Conceiving that the schedule unjustly discriminated between shipments loaded from tipples and those loaded from wagons, he brought, in the Circuit Court of Marion County, West Virginia, on April 19, 1906, an action against the railroad company to recover the excess so paid. The case was heard upon an agreed statement of facts, which set forth, with some detail, the matters just stated and recited that it embodied "all the facts and evidence in the cause." But the statement did not disclose, or even suggest, that the schedule had been the subject of a complaint to the Interstate Commerce Commission or had been found by the Commission to be unjustly discriminatory, or that the railroad company had been ordered by the Commission to desist from giving effect to the schedule or to make reparation to Robinson or any other shipper because of prior exactions thereunder. Being of opinion that, upon the agreed statement, Robinson was not en-

titled to recover, the court entered a judgment dismissing his action, and that judgment was affirmed by the Supreme Court of Appeals of the State. 64 W. Va. 406. He then sued out this writ of error upon the ground that, by the judgment of affirmance, he was denied rights specially set up under the act to regulate interstate commerce.

The first question to be considered is, whether, consistently with the provisions of that act, Robinson could maintain his action for reparation in the absence of an order by the Interstate Commerce Commission finding that the established schedule whereby the additional fifty cents per ton was exacted was unjustly discriminatory, determining what reparation should be made because of prior exactions thereunder, and directing the carrier to desist from such discrimination in the future, and to make the reparation indicated. It was contended by him in the Supreme Court of Appeals of the State, and is contended now, that the question should be answered in the affirmative because of the provision in § 22 (Act of 1887) that "nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies." But it must be ruled otherwise, and for these reasons:

The act, c. 104, 24 Stat. 379; c. 382, 25 Stat. 855; c. 61, 28 Stat. 643; c. 708, 32 Stat. 847, whilst prohibiting unreasonable charges, unjust discriminations and undue preferences by carriers subject to its provisions, also prescribed the manner in which that prohibition should be enforced; that is to say, the act laid upon every such carrier the duty of publishing and filing, in a prescribed mode, schedules of the rates to be charged for the transportation of property over its road, declared that the rates named in schedules so established should be conclusively deemed to be the legal rates until changed as provided in the act, forbade any deviation from them

while they remained in effect, invested the Interstate Commerce Commission with authority to receive complaints against rates so established, and to inquire and find whether they were in any wise violative of the prohibitions of the act, and, if so, what, if any, injury had been done thereby to the person complaining or to others, and further authorized the Commission to direct the carrier to desist from any violation found to exist, and to make reparation for any injury found to have been done. Provision was also made for the enforcement of the order for reparation, by an action in the Circuit Court of the United States, if the carrier failed to comply with it.

Thus, for the purpose of preventing unreasonable charges, unjust discriminations and undue preferences, a system of establishing, maintaining and altering rate schedules and of redressing injuries resulting from their enforcement was adopted whereby publicity would be given to the rates, their application would be obligatory and uniform while they remained in effect, and the matter of their conformity to prescribed standards would be committed primarily to a single tribunal clothed with authority to investigate complaints and to order the correction of any non-conformity to those standards by an appropriate change in schedules and by due reparation to injured persons.

When the purpose of the act and the means selected for the accomplishment of that purpose are understood, it is altogether plain that the act contemplated that such an investigation and order by the designated tribunal, the Interstate Commerce Commission, should be a prerequisite to the right to seek reparation in the courts because of exactions under an established schedule alleged to be violative of the prescribed standards. And this is so, because the existence and exercise of a right to maintain an action of that character, in the absence of such an investigation and order, would be repugnant to the declared

rule that a rate established in the mode prescribed should be deemed the legal rate and obligatory alike upon carrier and shipper until changed in the manner provided, would be in derogation of the power expressly delegated to the Commission, and would be destructive of the uniformity and equality which the act was designed to secure.

In the case of *Texas and Pacific Railway Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426, 440, where such a right was asserted and denied, it was said by this court:

"Indeed the recognition of such a right is wholly inconsistent with the administrative power conferred upon the Commission and with the duty, which the statute casts upon that body, of seeing to it that the statutory requirement as to uniformity and equality of rates is observed. Equally obvious is it that the existence of such a power in the courts, independent of prior action by the Commission, would lead to favoritism, to the enforcement of one rate in one jurisdiction and a different one in another, would destroy the prohibitions against preferences and discrimination, and afford, moreover, a ready means by which, through collusive proceedings, the wrongs which the statute was intended to remedy could be successfully inflicted. Indeed no reason can be perceived for the enactment of the provision endowing the administrative tribunal, which the act created, with power, on due proof, not only to award reparation to a particular shipper, but to command the carrier to desist from violation of the act in the future, thus compelling the alteration of the old or the filing of a new schedule, conformably to the action of the Commission, if the power was left in courts to grant relief on complaint of any shipper, upon the theory that the established rate could be disregarded and be treated as unreasonable, without reference to previous action by the Commission in the premises. This must be, because, if the power existed in both courts and the Commission to originally hear complaints on this subject, there might

be a divergence between the action of the Commission and the decision of a court. In other words, the established schedule might be found reasonable by the Commission in the first instance and unreasonable by a court acting originally, and thus a conflict would arise which would render the enforcement of the act impossible."

It is true, as was urged in argument, that in that case the complaint against the established rate was that it was unreasonable, while here the complaint is that the rate was unjustly discriminatory. But the distinction is not material. The power of the Commission over the two complaints is the same, one is as likely to become the subject of diverging opinions and conflicting decisions as is the other, and if a court, acting originally upon either, were to sustain it and award reparation, the confusing anomaly would be presented of a rate being adjudged to be violative of the prescribed standards and yet continuing to be the legal rate, obligatory upon both carrier and shipper.

Of course, the provision in § 22, as also the provision in § 9, must be read in connection with other parts of the act and be interpreted with due regard to its manifest purpose, and, when that is done, it is apparent that neither provision recognizes or implies that an action for reparation, such as is here sought, may be maintained in any court, Federal or state, in the absence of an appropriate finding and order of the Commission. *Texas and Pacific Railway Co.* v. *Abilene Cotton Oil Co.*, *supra*, pp. 442, 446.

The next question to be considered is, whether judicial notice should have been taken of the decision of the Commission in *Glade Coal Co.* v. *Baltimore & Ohio Railroad Co.*, wherein, as it is said, the rate here in question was found to be unjustly discriminatory and the railroad company was directed to desist from its enforcement. The decision was rendered April 28, 1904, and authoritatively published in 10 I. C. C. 226, but was not mentioned in the pleadings or in the agreed statement of facts. In the Su-

preme Court of Appeals of the State it was contended that the decision should have been judicially noticed by the trial court, but the contention was rejected, and that ruling is now challenged as contravening the provision in § 14 of the act (25 Stat. 855), which reads: "The Commission may provide for the publication of its reports and decisions in such form and manner as may be best adapted for public information and use, and such authorized publications shall be *competent evidence* of the reports and decisions of the Commission therein contained, in all courts of the United States, and of the several States, without any further proof or authentication thereof."

Undoubtedly, this provision makes the decisions of the Commission, as so published, admissible in evidence without other proof of their genuineness, but it does not require that they be judicially noticed or relieve litigants from offering them in evidence as they would any other competent evidence intended to be relied upon. Its purpose is to relieve litigants from the inconvenience and expense of obtaining certified copies of the decisions by authorizing the use of the published copies. but it does not otherwise change the rules of evidence. The ruling, therefore, was not in contravention of the statute.

The result, however, would have been the same had the decision been properly before the court. An examination of it discloses that it did not contain any finding or direction as to what, if any, reparation should be made because of prior exactions of the rate which it condemned. It did find that the complaining party in that proceeding had been injured by the refusal of the railroad company to furnish cars on certain occasions for the shipment of coal, and did direct that reparation therefor be made, but that is without bearing here.

It follows that the judgment must be affirmed, and it is so ordered.

*Affirmed.*