S. A. FOSTER LUMBER COMPANY, APPELLANT, V. UNION PACIFIC RAILROAD COMPANY, APPELLEE.

FILED FEBRUARY 12, 1915. No. 17,981.

Railroads: INTERSTATE SHIPMENTS: EXCESSIVE CHARGES: REMEDY. A shipper cannot maintain an action in the courts of this state to secure reparation for excessive freights collected on an interstate shipment, where the rate charged was in accordance with the published tariff of the carrier as authorized by the interstate commerce commission and no order for a refund or reparation has been made by said commission.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*W. B. Price* and *Ray J. Abbott,* for appellant.

*Edson Rich, B. W. Scandrett* and *C. B. Matthai, contra.*

MORRISSEY, C. J.

The appellant, S. A. Foster Lumber Company, engaged in business at Callaway, Nebraska, on the 23d day of June, 1907, applied to the connecting line of the appellee at Wrencoe, Idaho, for a car of 30,000 pounds net minimum carrying capacity in which to ship 25,780 pounds of lumber from Wrencoe, Idaho, to Callaway, Nebraska, and at that time paid to the proper officer of the carrying company the full tariff rate for transporting such car in the sum of $140. For its own convenience the carrier furnished a car with a minimum carrying capacity of 60,000 pounds. The

tariff fixed and established by the interstate commerce commission for the car so furnished was $270. After the shipment was delivered the appellee demanded the further sum of $130 to cover the difference between the amount paid and the tariff so fixed. This sum was paid under protest by the shipper, on October 31, 1911, making a total paid for the transportation of said car of the sum of $270. The connecting line of the appellee did not have available a car with a net minimum carrying capacity of 30,000 pounds at the time this shipment was made, and the larger car was furnished solely for the convenience of the carrying company, and the smaller car would have answered the requirements of the shipper equally as well. Without making complaint to the interstate commerce commission or demanding reparation of that tribunal, appellant brought suit in the courts of this state to recover back the sum of $130 which it had theretofore paid to appellee under protest. A jury was waived in the district court and the cause was tried to the court. The findings and judgment of the trial court being for the appellee, the appellant has brought the case here on appeal.

It is agreed that the rate charged is the proper one for a car of the capacity furnished; but it is contended by the appellant that the car ordered would have answered equally as well for the shipment as made, and that the shipper cannot furnish a larger car than the one ordered and then collect a higher tariff than what it would be entitled to collect for the car ordered. The appellee admits that the car furnished rendered no greater or better service than the car ordered would have rendered, but says that, under the act of congress known as the "Interstate Commerce Act," it is not permitted to make reparation in the absence of an order so to do from the interstate commerce commission.

It is contended by the appellant that the question of rates and tariffs is not involved in the controversy. It says that the appellee's published rates for the car of 30,000 pounds net minimum carrying capacity and for a 60,000 pounds net minimum carrying capacity are satisfactory to it, but that appellant had the right to order

and get a car of 30,000 pounds net minimum carrying capacity, and if the carrier used a larger car it is a matter in which the appellant is not concerned.  But the trial court very properly treated the question as one involving the reasonableness of a tariff rate, and a like rule is laid down by the interstate commerce commission in *American Lumber & Mfg. Co. v. Southern Pacific Co.*, 14 I. C. C. Rep. 561.

The railroad company in making the collection for a car of larger capacity did what it was bound to do under the interstate commerce act and its tariff rates as published, and the published tariff rates, which both the shipper and the company are bound to know, are the rates which must be collected in the first instance, the charges being no longer the subject of contract but of law.  It follows that the appellant's request for reparation is one that must be made in the first instance to the interstate commerce commission.  Conference Ruling 220, June 7, 1907; *Texas & P. R. Co. v. Abilene Cotton Oil Co.*, 204 U. S. 426, 440, 9 Am. & Eng. Ann. Cas. 1075.

In the case of *Robinson v. Baltimore & O. R. Co.*, 222 U. S. 506, Mr. Justice Van Devanter, speaking for the court, says: "The acts, ch. 104, 24 St. at L. 379; ch. 382, 25 St. at L. 855; ch. 61, 28 St. at L. 643; ch. 708, 32 St. at L. 847, whilst prohibiting unreasonable charges, unjust discriminations, and undue preferences by carriers subject to its provisions, also prescribed the manner in which that prohibition should be enforced; that is to say, the act laid upon every such carrier the duty of publishing and filing, in a prescribed mode, schedules of the rates to be charged for the transportation of property over its road, declared that the rates named in schedules so established should be conclusively deemed to be the legal rates until changed as provided in the act, forbade any deviation from them while they remained in effect, invested the interstate commerce commission with authority to receive complaints against rates so established, and to inquire and find whether they were, in any wise violative of the prohibitions of the act, and, if so, what, if any, injury had been done thereby to the

person complaining or to others, and further authorized the commission to direct the carrier to desist from any violation found to exist, and to make reparation for any injury found to have been done. Provision was also made for the enforcement of the order for reparation, by an action in the circuit court of the United States, if the carrier failed to comply with it.

"Thus, for the purpose of preventing unreasonable charges, unjust discriminations and undue preferences, a system of establishing, maintaining and altering rate schedules and of redressing injuries resulting from their enforcement was adopted whereby publicity would be given to the rates, their application would be obligatory and uniform while they remained in effect, and the matter of their conformity to prescribed standards would be committed primarily to a single tribunal clothed with authority to investigate complaints and to order the correction of any nonconformity to those standards by an appropriate change in schedules and by due reparation to injured persons.

"When the purpose of the act and the means selected for the accomplishment of that purpose are understood, it is altogether plain that the act contemplated that such an investigation and order by the designated tribunal, the interstate commerce commission, should be a prerequisite to the right to seek reparation in the courts because of exactions under an established schedule alleged to be violative of the prescribed standards. And this is so, because the existence and exercise of a right to maintain an action of that character, in the absence of such an investigation and order, would be repugnant to the declared rule that a rate established in the mode prescribed should be deemed the legal rate and obligatory alike upon carrier and shipper until changed in the manner provided, would be in derogation of the power expressly delegated to the commission, and would be destructive of the uniformity and equality which the act was designed to secure."

The judgment of the district court is correct and is

AFFIRMED.

LETTON, FAWCETT and HAMER, JJ., not sitting.