[No. 12727. Department One. July 17, 1916.]

NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*, v.
CARSTENS PACKING COMPANY, *Respondent*.[1]

COMMERCE — REGULATION — RULES OF INTERSTATE COMMERCE COM-
MISSION—REASONABLENESS—POWER OF COURTS — JURISDICTION. The
courts are without jurisdiction to determine the reasonableness of
the demurrage rules of the Interstate Commerce Commission, except
in review of orders of the commission prescribing such rules, com-
mitted, in the first instance, to the board by Congress, where the ques-
tion is raised in an action by a carrier to collect demurrage and is
involved in or depends upon the provisions of the act, and does not
involve a constitutional subject which from its very nature and
effect dominates the act to regulate commerce, and independent of
all right or remedy created or depending upon that statute.

SAME. The decision of the Interstate Commerce Commission that
its rule charging demurrage on loaded private cars while on its
own private tracks has a tendency to force such cars back into com-
merce, and that, having submitted its cars to use under those con-
ditions, the owner cannot complain when the conditions are enforced,
obviously raises the constitutional question as to the taking of pri-
vate property without due process of law, as an administrative ques-
tion under the act to regulate commerce, which had no existence "in-
dependent of all right or remedy under the statute;" hence the courts
have no jurisdiction to determine the reasonableness of the rule
except in review of orders of the commission prescribing it.

FULLERTON, J., dissents.

Appeal from a judgment of the superior court for Pierce
county, Back, J., entered December 24, 1914, upon findings
in favor of the defendant, in an action to collect demurrage,
tried to the court. Reversed.

*Geo. T. Reid, J. W. Quick,* and *L. B. da Ponte,* for appel-
lant.

*C. F. Wilt* (*W. A. Johnson,* of counsel), for respondent.

ELLIS, J.—Action to recover $342 claimed by plaintiff to
be due to it from defendant on account of demurrage on

[1]Reported in 158 Pac. 721.

eleven oil tank cars, owned by defendant, while standing on defendant's private tracks laid on its private property, in the city of Tacoma. The court found, in substance, that the plaintiff is an interstate common carrier of freight and passengers for hire; that defendant operates a factory for the manufacture of cotton seed oil products and dressed meats for wholesale; that the cars in question loaded with cotton seed oil were delivered to plaintiff in the state of Texas, and were delivered by plaintiff to the defendant in the city of Tacoma; that the cars belong to defendant and stood on defendant's private spur track on defendant's private ground during the period for which demurrage was charged; that at the time there was in effect a tariff duly filed and published as required by the acts of Congress relating to interstate commerce, providing for demurrage as follows:

"Cars held for or by consignors or consignees for loading, unloading, forwarding directions, or for any other purpose, are subject to these demurrage rules, except as follows:

"(A)    Cars loaded with live stock.

"(B)    Empty cars placed for loading coal at mines or mine sidings or coke at coke ovens.

"(C)    Empty private cars stored on carrier's or private tracks provided such cars have not been placed or tendered for loading on the orders of a shipper.

"Note.—Private cars while in railroad service, whether on carrier's or private tracks, are subject to these demurrage rules to the same extent as cars of railroad ownership.

"(Empty private cars are in railroad service from the time they are placed by the carrier for loading or tendered for loading on the orders of a shipper. Private cars under lading are in railroad service until the lading is removed and cars are regularly released. Cars which belong to an industry performing its own switching service are in railroad service from the time they are placed by the industry upon designated interchange tracks and thereby tendered to the carrier for movement. If such cars are subsequently returned empty they are out of service when withdrawn by the industry from the interchange; if returned under load, rail-

road service is not at an end until the lading is duly removed.") ;

that the above is the uniform demurrage rule adopted at a conference in the year 1909, in Washington, D. C., in which various commercial clubs, boards of trade, state railroad commissioners (including those of the state of Washington), the Interstate Commerce Commission, and representatives of various carriers participated, and was adopted by the carriers throughout the United States, but that defendant took no part in such conference; that it is provided by rule 7 of the demurrage code that a charge of one dollar per day after the expiration of forty-eight hours' free time allowed will be made for each and every day of delay; and that, if the rule is reasonable, there has accrued $342 demurrage on defendant's private cars while stored on its private tracks loaded with its own oil; that, on different occasions within six years prior to the commencement of this action, defendant has requested plaintiff to furnish oil tank cars but was advised that it could not do so, which prompted defendant to furnish private cars for its own use; that the cars are never used by plaintiff except in defendant's business unless permission is obtained therefor; that rule 32 of the published rates and charges in effect provides that:

"Where the classification provides rates for articles in tank cars, it should be understood that such rating does not carry any obligation on the part of the carrier to furnish tank cars in case the carrier does not own or has not made any arrangements for supplying such equipment. When furnished by shippers or owners, mileage at the rate of three-quarters of a cent per mile will be allowed for use of tank cars, loaded and empty, provided such cars are properly equipped. No mileage will be allowed on cars switched at terminals nor for movement of cars under empty freight car tariffs."

The court also found that, under the demurrage rule, demurrage would cease immediately on unloading of the cars, and defendant would be under no obligation to return the

cars to the carrier until it saw fit to do so; and that defendant receives no benefit from the demurrage charge on its cars while standing loaded on its own tracks. The court concluded as a matter of law that, in so far as the demurrage code relates to demurrage on private inbound cars under load of the company owning the same while on its private tracks, it is unreasonable, and entered a judgment dismissing the action, with costs to plaintiff. Plaintiff appeals. The only question for our consideration is whether the findings sustain the court's conclusion and judgment.

The respondent contends that the demurrage code is unreasonable in that it deprives the respondent of the right to use its own cars upon its own tracks for its own purposes without paying demurrage therefor, and is a taking of respondent's property without compensation and without due process of law, in violation of the constitution of the United States and the constitution of this state.

The appellant contends that the court had no jurisdiction to determine the reasonableness of the rule, which it asserts is a question committed by Congress primarily to the sole determination of the Interstate Commerce Commission. Passing, for the nonce, the constitutional question involved, and considering only the question of reasonableness, it seems to us that the appellant's contention is correct. The Supreme Court of the United States has repeatedly held that the courts are without jurisdiction to pass upon the reasonableness of rules, regulations, rates and practices of common carriers except in review of orders of the Commission prescribing such rules, regulations, rates and practices. In short, that the reasonableness of duly published rates, rules and regulations is an administrative question entrusted exclusively in the first instance by Congress to the Interstate Commerce Commission. *Texas & Pac. R. Co. v. Abilene Cotton Oil Co.*, 204 U. S. 426; *Southern R. Co. v. Tift*, 206 U. S. 428; *Robinson v. Baltimore & Ohio R. Co.*, 222 U. S. 506; *United States v. Pacific & Arctic R. & N. Co.*, 228 U. S.

87; *Baltimore & Ohio R. Co. v. United States ex rel. Pitcairn Coal Co.*, 215 U. S. 481.   As pointed out by the Supreme Court of the United States in the case last above cited:

"Any other view would give rise to inextricable confusion, would create unjust preferences and undue discriminations, would frustrate the purposes of the act, and, in effect, cause the act to destroy itself."

The court illustrates this result as follows:

"A particular regulation of a carrier engaged in interstate commerce is assailed in the courts as unjustly preferential and discriminatory.   Upon the facts found the complaint is declared to be well founded.   The administrative powers of the commission are invoked concerning a regulation of like character upon a similar complaint.   The commission finds, from the evidence before it, that the regulation is not unjustly discriminatory.   Which would prevail?   If both, then discrimination and preference would result from the very prevalence of the two methods of procedure.   If, on the contrary, the commission was bound to follow the previous action of the courts, then it is apparent that its power to perform its administrative functions would be curtailed, if not destroyed.   On the other hand, if the action of the commission was to prevail, then the function exercised by the court would not have been judicial in character, since its final conclusion would be susceptible of being set aside by the action of a mere administrative body."

The case before us presents a striking exemplification of the result there predicted.   The Interstate Commerce Commission, in *Procter & Gamble Co. v. Cincinnati, H. & D. R. Co.*, 19 I. C. C. 556, has passed upon the identical regulation here assailed and held it valid, overruling in detail every argument advanced by the respondent here in support of the judgment of the trial court which we are reviewing.   If we sustain the trial court, we perpetrate the identical solecism portrayed in the above quoted illustration.

In the *Procter & Gamble Co.* case, that company, being dissatisfied with the same demurrage regulation here involved, filed a complaint with the Interstate Commerce Com-

mission attacking it as unreasonable, and repugnant to the act to regulate commerce. The Commission, after a hearing, held that the regulation was not in conflict with the act to regulate commerce but conformed thereto and tended to prevent unlawful preferences and discriminations. It dismissed the complaint. The Procter & Gamble Company thereupon filed a petition in the Commerce Court making the United States, the Interstate Commerce Commission and the railroads complained of, defendants. The Commerce Court considered the case in a twofold aspect: First, as to its jurisdiction; second, on the merits. On the first question, it held that it had jurisdiction because it conceived that the refusal to grant relief was equivalent to an affirmative order imposing the demurrage, thus conferring jurisdiction. On the merits, it held that the Interstate Commerce Commission had rightfully refused to grant relief, that the company had accepted the provisions of the published tariffs concerning the use of its tank cars; that, therefore, those cars were subject to the regulations which the carriers had lawfully established; and that there was no foundation for the claim that the demurrage regulation was the taking of property without due process of law. *Procter & Gamble Co. v. United States,* 188 Fed. 221.

The Procter & Gamble Company thereupon appealed to the Supreme Court of the United States. *Procter & Gamble Co. v. United States,* 225 U. S. 282. The Commerce Court was given, by the act creating it, the jurisdiction possessed by the Circuit Courts of the United States and the judges thereof, immediately prior to June 18, 1910, among others, over all cases brought "to enjoin, set aside, annul or suspend, in whole or in part, any order of the Interstate Commerce Commission." 36 Statutes at Large, 539; 36 Statutes at Large 1087, 1148. The Supreme Court held that this conferred jurisdiction on the Commerce Court only to entertain complaints as to affirmative orders of the commission and not where the commission has merely dismissed the complaint.

This on the ground that the Interstate Commerce Commission is an administrative body with *quasi* judicial attributes to which was confided the enforcement of the provisions of the act to regulate commerce, which act made the judgment of the Commission a prerequisite to a resort to the courts. The court said:

"In other words, as to the subjects stated the act did not give to the courts power to hear the complaint of a party concerning a violation of the act, but only conferred power to give effect to such complaints, when by previous submission to the Commission, they had been sanctioned by a command of that body."

That the lack of jurisdiction in the Commerce Court to entertain complaints as to mere negative action of the Commission is traceable to the fact that at the time the Commerce Court was created the Circuit Courts had no such power is expressly declared in the opinion last cited as follows:

"Originally the duty of the courts to determine whether an order of the Commission should or should not be enforced carried with it the obligation to consider both the facts and the law. But it had come to pass prior to the passage of the act creating the Commerce Court that in considering the subject of orders of the Commission, for the purpose of enforcing or restraining their enforcement, the courts were confined by statutory operation to determining whether there had been violations of the Constitution, a want of conformity to statutory authority, or of ascertaining whether power had been so arbitrarily exercised as virtually to transcend the authority conferred although it may be not technically doing so. *Int. Com. Comm. v. Union Pacific R. R.*, 222 U. S. 541, 547; *Int. Com. Comm. v. Ill. Cent. R. R.*, 215 U. S. 452."

The Supreme Court further held that, if the constitutional question claimed to be involved "concerned a subject which from its very nature and effect dominated the act to regulate commerce and therefore was wholly independent of all questions of right or remedy created by or depending upon that statute," then the Commerce Court had no jurisdiction be-

cause such questions are reserved by the act creating the Commerce Court to the Circuit Courts, but that:

"If, on the other hand, the constitutional question was involved in or depended upon the provisions of the act to regulate commerce that question in the nature of things was subject to the precedent action of the Commission on the subjects committed to it by the act to regulate commerce and as to which the court had jurisdiction alone to act in virtue of a prior affirmative order of the Commission."

That is to say, that as to the first class of constitutional questions an action can be maintained in the Circuit Court without an antecedent resort to the Commission; but as to the last mentioned class of constitutional questions, no court has primary jurisdiction but only a jurisdiction to review a prior *affirmative order* of the Commission. Finally, the court held that, for these reasons, the Commerce Court had no jurisdiction to entertain either of such constitutional questions but did not decide into which class the attack on the demurrage charge would fall.

We shall assume that, where, as here, their jurisdiction is invoked to collect a charge imposed by the carrier with the consent of the Interstate Commerce Commission, the state courts have all the powers to hear and determine that the Federal courts would have in such a case. On the question of jurisdiction, it only remains, therefore, for us to determine which, if either, of the above constitutional questions is here involved. Does respondent's claim, that the exacting of the demurrage under the circumstances is a taking of its property without compensation and deprives it of its property without due process of law, concern a subject which from its very nature and effect dominates the interstate commerce act, and is therefore wholly independent of all right or remedy under that statute; or is it a question involved in or depending upon the provisions of that act? If it is the former, the courts have a primary jurisdiction. If the latter the Interstate Commerce Commission alone has primary jurisdiction

and the courts can only review a prior affirmative order of that body.

We are convinced that the constitutional point presented is not independent of the rights and remedies created by the act to regulate commerce, but is directly involved in and depends upon that act. This is apparent from the ground upon which the complaint in the *Procter & Gamble* case was dismissed by the Interstate Commerce Commission, which was in effect this: That private cars should be taken into account by carriers in determining an equitable distribution of cars among all shippers; that it was so held in *Interstate Commerce Commission v. Illinois Cent. R. Co.*, 215 U. S. 452; that the charging of demurrage on loaded private cars on the owner's private tracks has a tendency to force such cars back into commerce and that without some such coercive rule,

"An industry having a supply of its own cars could insist that when such cars went on its private tracks they were entirely out of service and might not be considered as any part of the equipment, and it could therefore demand from the railroad company an additional supply of cars, contending that its own should not be treated as cars in commerce, but as buildings for storage, and, having so secured the desired equipment from the railroad company, it could again put its own cars into service, and thus defeat the operation of any fair rule for distribution of equipment;"

that the law does not impose on the carriers the obligation to haul private cars; that if private cars are used it is under the contract stated definitely in the carrier's tariffs; that the carrier has said in its tariffs that it will use privately owned cars and pay three-fourths of one cent per mile for such use and will subject them to the demurrage rules. In substance, that having submitted his cars to use under these conditions, the owner cannot complain when the conditions are enforced. Obviously, the constitutional question arose and had to be met by the Commission at the threshold of the inquiry as an administrative question under the act to regulate commerce. It had no existence "independent of all

right or remedy under the statute." It may be remarked that, in a subsequent case, the Commission has held that all cars used by carriers, whether owned by the carriers themselves or leased from private car lines or from shippers, must be distributed without discrimination. *Pennsylvania Paraffine Works v. Pennsylvania R. Co.*, 34 I. C. C. 179.

Following the Supreme Court of the United States in *Procter & Gamble* case, we hold that the court had no jurisdiction to pass upon the validity of the demurrage rule prior to any affirmative order of the Commission thereon. It may be urged that this leaves in the clouds the question as to what, if any, remedy the shipper would have in case he had first invoked the action of the Commission and that body had dismissed his complaint without an affirmative order. The answer is that we leave the question exactly where the Supreme Court of the United States left it in *Procter & Gamble Co. v. United States, supra.* That case is not distinguishable in this particular from the case before us.

The judgment is reversed, and the cause is remanded with direction to enter judgment for the appellant as prayed.

MORRIS, C. J., MOUNT, and CHADWICK, JJ., concur.

FULLERTON, J. (dissenting)—I am unable to concur in the conclusion reached by the majority. The facts are stated in the opinion, but it may be well to recapitulate them here in a more compact form. The respondent owns and operates a private manufacturing plant at the city of Tacoma. In connection with its business, it owns a private railway track constructed upon its own property which connects with the railway tracks of the appellant, a common carrier. In the prosecution of its business, the respondent uses quantities of cotton seed oil. This it must transport to its place of business from the cotton growing region over the tracks of the appellant. To transport the oil economically, requires cars of a special design which cannot be used in general railway traffic, which the appellant does not possess and which

it refused to furnish on the demand of the respondent.    To
meet its needs, the respondent constructed private cars of
its own designed especially for the particular purpose.    As
it needs a supply of the particular product, the respondent
tenders these cars to the appellant, which transports them
empty to a place designated, where they are laden, and then
returns them to the respondent, shunting them laden onto its
private tracks after the payment of the transportation
charges.    The appellant has no control over the cars beyond
the time they are in its possession.    After they are redelivered
to the respondent, it has no power to direct their movements
or their place of storage, nor can it require their return into
its service against the will or consent of their owner.    It con-
tends, nevertheless, that it has the right, under the rules of
the Interstate Commerce Commission, to have the lading re-
moved from the cars within a fixed time after their redelivery,
and as a penalty for failing to remove the lading within the
fixed time, to charge demurrage thereon during the time of
the ensuing delay in the removal of the lading.

The majority hold that, under the rules mentioned, such
demurrage can be collected, and hold further that the rea-
sonableness of the rules, conceding the interpretation put
upon them to be correct, cannot be set up by the owner of
the cars as a defense to an action brought in a state court
by the carrier to enforce payment of the demurrage.    It is
from both of these conclusions that I dissent.

The rules of the Interstate Commerce Commission are set
out in the majority opinion.    It may be that a literal inter-
pretation of them would support the majority, but it is clear
to my mind that the respondent's situation does not fall
within the spirit of the rules, and that as applied to its situ-
ation they are unreasonable and hence void.    The demurrage
rules cited were made necessary by conditions existing in the
coal regions.    It was found that many owners and operators
of coal mines held a large number of private cars, which they
used to ship coal to dealers therein.    This enabled them to

confer on their dealers an advantage not afforded dealers who were served by cars belonging to the carrier; as in the one case the dealer could hold the cars with the consent of the shipper, and team directly to his customers, while the others, under the penalty of demurrage, were forced to unload promptly at an additional cost. Moreover, the cars were at all times in actual service. No sooner were they unloaded than they were returned for another load, and, aside from this special privilege and immunity, were the equivalent of similar cars owned by the carrier. Under these circumstances, it might not be unreasonable to say that the coal companies should not be permitted to confer this advantage on dealers receiving coal in the coal company's private cars, but that all such cars should be treated as in the public service until returned unladen to their owner. But manifestly no such condition exists here.

The cars in question are not used to ship the respondent's products to dealers to be sold in competition with other dealers who use cars belonging to the carrier. On the contrary, they are used to ship a particular product from a distant point to the respondent. They are not used in competition with any one. The respondent owns them from the necessities of the case, because of the refusal of the carrier to furnish cars for the service. The rule concedes that the carrier has no control over them after they are once unladen. The respondent can use them after such time for any purpose it pleases. This would mean that it could reload them with the same product and hold them in storage as long as it chooses. Again, neither the carrier nor the public suffer harm by the failure to unload the cars within the limited period, nor does any advantage accrue to either by having them unloaded. The requirement in so far as it applies to the respondent's situation is therefore useless and senseless; it is a sacrifice of the substance to the shadow.

"Beyond controversy, in determining whether an order of the commission shall be suspended or set aside, we must

consider, *a,* all relevant questions of constitutional power or right; *b,* all pertinent questions as to whether the administrative order is within the scope of the delegated authority under which it purports to have been made; and, *c,* a proposition which we state independently, although in its essence it may be contained in the previous one, viz., whether, even although the order be in form within the delegated power, nevertheless it must be treated as not embraced therein, because the exertion of authority which is questioned has been manifested in such an unreasonable manner as to cause it, in truth, to be within the elementary rule that the substance, and not the shadow, determines the validity of the exercise of the power." *Interstate Commerce Commission v. Illinois Cent. R. Co.,* 215 U. S. 452.

Other reasons could be given in support of my contention, but the foregoing sufficiently satisfy my mind that the rule was either not intended to apply to the respondent's situation, or that it is void because unreasonable.

The second rule laid down in the majority opinion seems to me to be likewise unmaintainable.  A rule of the Interstate Commerce Commission has no greater sanctity than a state or Federal statute, and no court, so far as I am aware, hesitates to hold these invalid when they plainly violate the fundamental rights of individuals.  Nor does the case relied upon by the majority, in my opinion, sustain its conclusion. The court was there discussing the extent of the jurisdiction of the Commerce Court.  The case arose out of these facts: The Procter & Gamble Company, being dissatisfied with the regulations concerning demurrage in so far as they imposed regulations upon the use of its tank cars, filed a complaint with the Interstate Commerce Commission charging the rules to be unjust and oppressive and repugnant to the act to regulate commerce.  After a hearing, the commission made a report, denying the relief sought.  The company thereupon sought to review this act in the Commerce Court.  That court entertained jurisdiction, and considered the case upon its merits, affirming the report of the Commission.  The case was

then appealed by the Procter & Gamble Company to the Supreme Court of the United States. That court declined to consider the case upon its merits, holding that the act creating the Commerce Court conferred on that court jurisdiction to review only "affirmative orders of the commission," but not jurisdiction to redress complaints where the commission had refused the relief asked, and that, since the Commerce Court was without jurisdiction, it was likewise without jurisdiction to pass upon the merits of the complaint. This to my mind is far from holding that a court whose jurisdiction is sought to enforce a rule of the Interstate Commerce Commission is without jurisdiction to inquire into the reasonableness or validity of the rule.

I have found no case precisely in point. Cases are abundant, however, where the courts have entertained suits to restrain the order of the Commission claimed to be unjust and unreasonable, and hence in excess of the Commission's powers. If this may be done in advance of their attempted enforcement, I see no reason why one may not urge the principle where an attempt is made to acquire an advantage based upon the invalid rule.

I need not pursue the inquiry. . I am of the opinion that the judgment of the trial court is in accordance with law, and should be affirmed.