**RISS & CO., Inc.**

v.

**UNITED STATES et al.**

**Civ. A. No. 7694.**

United States District Court
W. D. Missouri, W. D.
July 18, 1952.

A. A. Layne, Jr., Washington, D. C., John B. Gage, John H. Kreamer, Kansas City, Mo., for plaintiff (H. Charles Ephraim, Washington, D. C., on the brief).

William J. Hickey, Sp. Asst. to the Atty. Gen., for the United States. (James E. Kilday, Sp. Asst. to the Atty. Gen., Newell A. Clapp, Acting Asst. Atty. Gen., and Sam M. Wear, U. S. Atty., Kansas City, Mo., on the brief).

Allen Crenshaw, Associate Chief Counsel, Washington, D. C., for Interstate Commerce Commission (Edward M. Reidy, Chief Counsel, Washington, D. C., on the brief).

Lewin W. Wickes, Jr., Philadelphia, Pa., Francis J. Steinbrecher, Chicago, Ill., Walter A. Renz, New York City, and Henry W. Fox, Kansas City, Mo., for interveners (James W. Nisbet, Chicago, Ill., and Lathrop, Woodson & Parker, Kansas City, Mo., on the brief).

Before STONE, Circuit Judge, and DUNCAN and RIDGE, District Judges.

PER CURIAM.

Riss and Company, Inc. is an extensive motor carrier operating under various certificates bearing the general Commission docket number designation of MC–200. Among such certificates is MC–200 (Sub-No. 60TA), which is a temporary certificate to transport *"Dangerous Explosives, * * *"*. A number of railroads filed (February 27, 1952), with the Commission, a "Petition for Issuance of a Cease and Desist Order" against Riss to cease and desist from operating "beyond the scope of the territory authorized in Sub 60TA * * *" and "* * to confine its operations under Sub 60TA to the routes and points authorized in the certificate issued Riss and Company under MC 200 Sub 46 dated February 21, 1950." To this petition, Riss filed an answer which included a motion to dismiss the petition. Without further hearing on the petition and the answer, the Commission filed its report and entered its order (on June 2, 1952), that Riss cease and desist "on or before July 10, 1952" from transportation of dangerous explosives under MC–200 (Sub-No. 60TA) "beyond the scope of the operations specifically described in the appendix to the said report * * *" (64 M.C.C. 531). Riss filed a

petition to "reconsider and vacate" this order. Railway petitioners filed reply to this petition to reconsider. On July 14, 1952, the petition to reconsider was denied without further hearing. This proceeding is to review these Commission orders of June 2, 1952 and July 14, 1952.

Here plaintiff, in contending that these two orders of the Commission are erroneous, states its position (of course, as to the order of June 2, 1952) as follows:

" * * * erroneous and void as a matter of law and is arbitrary and capricious and without foundation either in fact or in law because: (1) the findings of fact and conclusions and orders were entered without notice and hearing in violation of the provisions of Part II of the Interstate Commerce Act, 49 U.S.C. § 301 et seq., and the Administrative Procedure Act, 5 U.S.C. § 1001 et seq., although notice and hearing was requested by plaintiff; (2) the operating authority in Docket Number MC–200 (Sub-No. 60TA), initially granted in 1942, continues in full force and effect by virtue of other orders of the Commission and Section 9(b) of the Administrative Procedure Act, 5 U.S.C. § 1008(b); and (3) the Commission has, without good cause appearing, restricted the operating rights granted, solely on grounds of interpretation, contrary to the terms and provisions of the operating authority granted."

The Commision contends that this proceeding was solely one to interpret the scope of temporary certificate Sub-No. 60TA; that the proceeding before it was "upon a petition, not a complaint," therefore the report and order are based on Secs. 204(a) (6), 210a(c) "and numerous judicial decisions construing Commission authority to interpret authority issued by it" and *not* under Secs. 204(c) or 212(a); that the report findings and the order are based solely upon Commission official records and no other evidence

was "required or necessary" to its interpretation; that a "formal hearing" is required only where facts, provable by other than its official records, are reasonably necessary for interpretation of operating authority.

The United States contends that plaintiff received adequate notice; and that, though not required to grant a hearing, the Commission did so giving plaintiff *every opportunity to present every contention*, of fact or law, it desired in opposition to the petition of the railroads.

The intervening railroads contend that Section 210a(a), giving power to the Commission to grant temporary certificates "without hearings or other proceedings", inherently includes power to interpret the scope of such grant without "hearings or other proceedings"; that the duty of the Commission, under Section 204(a) (6), "To administer, execute, and enforce all provisions of this part, to make all necessary orders in connection therewith" necessarily includes power to interpret the meaning of its temporary grants and to enforce such interpretation; that the only *fact* issue raised by interveners' petition was that of transgression by Riss of its granted authority under Sub. 60TA and, which issue was removed from dispute by admissions of Riss in its answer to interveners' petition; that there is no showing that the interpretation of Sub 60TA by the Commission is erroneous, arbitrary, capricious and without foundation.

### I.   ISSUE AS TO NOTICE AND HEARING.

The proceeding before the Commission was one, by the Railroads, to secure relief from injury they allege resulted from operation by Riss beyond the scope of the temporary certificate Sub 60TA. The relief sought was that the Commission "require Riss to confine its operations under Sub 60TA to the routes and points authorized in the certificate issued Riss & Company under MC–200 Sub 46 dated February 21, 1950".[1] This proceeding re-

---

1. The certificate issued on February 21, 1950 defined the "grandfather" rights as ·

to general commodities (not including explosives).

quired the determination of two matters: the scope of lawful operations by Riss under Sub 60TA and whether Riss was exceeding such lawful scope. The scope of such lawful operations was a matter of interpretation of the extent and terms of Sub 60TA—*in the situation here*, this would seem to be a question of law. Whether Riss was exceeding its authority was a purely factual matter of what it was doing measured by what it had authority to do. Although this "petition" before the Commission was made up of these two elements, the petition is a unit when we come to the question of the power of the Commission to consider and act upon it.

■■ The Commission has the power to interpret the meaning of a motor carrier certificate issued by it. Such is a necessary power to enable it to perform its duties under Section 204(a) (6) of the Act. The Commission can exercise this power even though it does so in a proceeding which seeks only a declaratory order construing a certificate.[2] But where such interpretation is an integral part of a pleading before the Commission which prays positive action therein by the Commission based upon such interpretation, we should treat the pleading as a unit.

■ Treating the so-called "petition" as a unit, it is nothing more nor less than a "complaint" within the meaning of Section 204(c) of the Act. That section sets forth the only method by which the Commission can, by its own action, "compel" compliance with the provisions of the Act or the requirements of the Commission thereunder, without resort to the Courts under Sections 222(a) or 222 (b).[3] This "petition" is the kind of thing meant by "complaint" as used in 204(c).

Treating the "petition" of the Railroads as a complaint within the meaning of Section 204(c), we are met by the con-

tentions of Riss (raised in its answer and motion to dismiss before the Commission) that the "petition" does not comply with the Rules of the Commission setting out the requirements for "complaints" and that, if the matters urged in the "petition" are proper for complaint proceedings, Rule 102 is not applicable.

■ The Commission regarded this proceeding as being under its Rule 102, which is one of its adopted General Rules of Practice, regulating procedures before it. Rule 102 is a catch-all providing a remedy where no other Rule does so. Since there are other Rules governing "complaints" and since this "petition" is, in essence, a "complaint", those Rules and not Rule 102 applies here. Thus this issue as to the Rules resolves into whether this "petition" meets the Rules requirements governing "complaints". Plaintiff sets forth (Appendix B of its main brief) what it states are all of the Rules governing "complaints" pertinent here. Accepting this unchallenged statement, this "petition" sufficiently complies therewith to overcome this objection by plaintiff. We conclude that this "petition" is a sufficient *complaint* within Section 204(c) and the Commission's General Rules of Practice governing complaints.

■ Another contention of plaintiff is that a "cease and desist" order cannot be made by the Commission where the effect thereof would be to deny Riss the right (in an action against Riss under Section 222(a) or 222(b)) to place in issue the scope of the certificate; and that such effect results where the Commission, prior to an action under 222(a) or 222(b), has ruled on the legality of the particular operations. The force of this position is, that unless Riss is given the notice and granted the hearing accorded by Section 204(c),[4] plaintiff will be denied opportunity to challenge the interpretation of Sub 60TA as made by

2. Carroll Trucking Company Interpretation of Certificate, 52 M.C.C. 178, 54 M. C.C. 664.

3. We are not impressed by the contention

that a *temporary* certificate is not within Section 204(c) as fully as a permanent certificate.

4. See also 49 U.S.C.A. § 17. (9).

the Commission in a judicial proceeding against it. This position is sound. Southwest Freight Lines v. I. C. C., 8 Cir., 184 F.2d 149, 151; I. C. C. v. G. & M. Motor Transfer Co., D.C., 64 F.Supp. 302, 303; I. C. C. v. Consolidated Freightways, Inc., D.C., 41 F.Supp. 651, 655. This is the legal doctrine that orders of the Commission are not subject to "collateral" attack in judicial proceedings but must be tested judicially in direct review of such orders. Such reviews are provided for, in .the Act, only by Section 204(c). That section provides for *complaints* before the Commission which must, by it, be considered and determined *upon due notice and proper hearing*. Therefore, the validity of these orders depends upon whether the "notice and hearing", required by Section 204(c), was accorded by the Commission in this proceeding which resulted in the cease and desist order.

■ (a) *Notice.* The record here shows service on Riss of a copy of the Railroads' petition on February 26, 1952 (Exh. 20, p. 117). Riss sought and obtained extension of time, until April 1 to answer (Exh. 20, p. 164). Riss filed answer and motion to dismiss on April 1 (Exh. 20, p. 89). There is no merit in the contention that Riss did not have proper and sufficient notice.

(b) *Hearing.* It is contended that plaintiff did not ask for a hearing before the Commission. This does not matter. Section 204(c) requires a hearing as a basis for Commission action upon a complaint. Even if such hearing might be waived (which we do not determine) yet there would have to be clear showing of waiver of such an important right. Here, the answer and motion of Riss, before the Commission, do not present such showing. The petition for reconsideration filed by Riss with the Commission emphatically denies any waiver and insists upon the right of a hearing (Exh. 20, p. 81).

We think the situation here created before the commission brought the proceedings before it within Section 204(c) requiring the "hearing" prescribed by that section.[5]

We have been cited no determination of the Commission based upon its construction of a certificate and resulting in an order against the certificated carrier where the Commission did not accord a hearing in respect to such construction by it.

The United States contends that "although the Commission was not required to grant a hearing, it did so, and plaintiff was given every opportunity to present every contention, either in fact or in law, in opposition to the railroads' petition" (Br. pp. 4–5). Also the intervening railroads contend that, even if Section 204(c) be applicable (which they deny), yet the requirement for a hearing thereunder "was fully satisfied by the state of the record" (Br. p. 34).

This "hearing" was made up of the pleadings before the Commission alone. The report and order of the Commission of June 2, 1952, were made without further or other appearances of the parties beyond these pleadings and without opportunity to offer evidence. These pleadings set out the contentions of the parties. Baldly stated, the main contention was whether Riss was operating beyond the territorial limitations of its temporary permit to transport explosives under certificate MC–200 (Sub-No. 60TA). Resolution of this main issue depended upon determination of two matters: the limits of authority under Sub-No. 60TA; and what operations Riss was actually carrying on in the transportation of explosives.

■ What Riss was actually doing as to such transportation is obviously a

---

5. Apparently, the Commission has heretofore usually accorded hearings even where the issue before it was solely the interpretation of the meaning of a certificate issued to a motor carrier un- der the Act and no other relief was sought. Carroll Trucking Company Interpretation of Certificate, 52 M.C.C. 178, 54 M.C.C. 664.

question of fact. We think this matter is not a disputed fact. In its answer to the petition before the Commission (Exh. 20, p. 99), Riss states:

"During the course of the proceedings in Sub-No. 84 which have lasted over four years, Riss has shown extensive operations under Sub-No. 60TA which the railroads now claim to have been illegal. Riss, to petitioners' [railroads] knowledge, has been operating its temporary authority in Sub-No. 60TA for almost six years and now for the first time the railroads question the propriety of these operations."

We think these quoted statements are direct admissions that the actual operations of Riss are those which the railroads declare are beyond the limits of Sub-No. 60TA as they construe such limits and which Riss asserts are within such limits as it construes them. This removes this matter of fact as an issue before the Commission.[6]

■ The remaining issue before the Commission was the interpretation of the territorial limits of its Sub-No. 60TA. Such character of issue may be one of law [7] or one of mixed law and fact [8] depending upon the particular situation. Here, we think it is one of law. No disputed *facts* seem to be involved or necessary to be resolved.[9]

The issue and the pertinent situation seem clear. The issue is whether the territorial limits of Sub-No. 60TA for transportation of explosives are the same as defined in a permanent certificate granted Riss in Sub-No. 46 for the transportation of other Commodities.

As shown by the evidence introduced *in this Court,* the situation is as follows as to various pertinent proceedings before the Commission. Riss (in 1942) purchased (with Commission approval) the rights of another carrier, Monark, which was operating under a temporary "grandfather" certificate (docketed as MC–30077) with certain Sub-numbers— one of which, Sub-No. 6TA, applied to transportation of explosives.[10]

There followed extensive proceedings before the Commission and in the Courts, Riss & Co., Inc., v. United States et al., D.C., 100 F.Supp. 468, affirmed per curiam 342 U.S. 937, 72 S.Ct. 559, 96 L.Ed. 697, rehearing denied 343 U.S. 937, 72 S.Ct. 769, 96 L.Ed. 1344, as to the rights acquired from Monark on the "grandfather" claims asserted under MC–200 Sub-No. 46 for transportation of *commodities generally.* The permanent certificate covering Sub-No. 46 was issued on February 21, 1950. It did not allow all of the operations claimed under the temporary certificates.

While the just described proceedings as to Sub-No. 46 were in progress, there were other proceedings, respecting transportation of explosives, going on. February 25, 1942, Monark had been granted temporary certificate (Exh. 7a) to transport explosives and ordnance supplies "To, from, and/or between points and places now served by applicant as set forth in * * *" MC–30077 and Sub-Nos. 1 to 5 inclusive. This certificate was for 180 days and was given Sub-No. 6TA under MC–30077. This certificate was renewed on April 9, 1942 for 180 days (Exh. 8) expiring October 6, 1942

---

6. The endeavor of Riss to weaken the meaning of this admission (Reply Brief, p. 14, note 10) is not convincing.

7. Interstate Common Carrier Council of Maryland, Inc., et al. v. United States et al., D.C.Md., 84 F.Supp. 414, 420, affirmed per curiam 338 U.S. 843, 70 S.Ct. 91, 94 L.Ed. 516; 54 M.C.C. 664.

8. Carroll Trucking Company Interpretation of Certificate, 52 M.C.C. 178.

9. When we speak of "facts" in this connection, we exclude such matters as applications for certificates, proceedings before the Commission in relation thereto, and orders of the Commission thereon. In a sense, all of such matters are facts which are parts of the record made by the Commission at a hearing— whether by formal introduction or by official notice.

10. The general docket number of Riss was MC–200. Upon its purchase of Monark rights, these rights were docketed under Riss' MC–200—the commodity rights being designated as "Sub-No. 46".

(see Exh. 9, p. 2, footnote 4). September 28, 1942, Riss was authorized to purchase Monark and its operating rights (specifically naming Sub-No. 6TA).

October 3, 1942, Riss filed application to transport "Dangerous Explosives and Ordnance Supplies To, from and/or between points and places now served by applicant as set forth in certificates issued by and applications pending with the Interstate Commerce Commission under Dockets MC 30077 and Sub Nos. 1 to 5 inclusive, Monark Freight System, Inc. * * * purchased by Riss & Company, Inc. * * *" This application set forth acquisition by Riss of MC–30077 Sub-No. 6TA, expiration thereof on October 6, 1942 and sought continuance of "the present temporary authority in effect until December 31, 1944" (see Exh. 3 attached to application). This application was docketed under MC–200 as Sub-No. 45TA. This application being for "an extension of operation" had attached a map (Exh. 2 thereto) showing the existing Riss authority and also the extension from Monark. This application is Exhibit 10 here. November, 1942, a temporary certificate was issued Riss until December 31, 1944 (Exh. 11). This certificate was extended until December 31, 1945 by general order (Exh. 18, pp. 20–21). Further until March 1, 1946 by general order (Exh. 18, pp. 36–37).

March 1, 1946, Riss applied to transport "Explosives and U. S. Army Ordnance Stores" over "regular" routes "between points named in I.C.C. Order of February 3, 1945 in * * * MC–200, Sub 46 (formerly Monark Motor Freight System Docket MC 30077)" until June 30, 1946 (Exh. 13). Certificate was granted April 15, 1946 until June 30, 1946 for transportation of *"Dangerous Explosives,* To, from and/or between points and places authorized to be served in connection with Docket Nos. MC 30077 and effective sub numbers thereunder which were acquired by applicant herein" (Exh. 16). This proceeding was given Docket No. MC–200 Sub 60TA. This certificate was extended (by general order) until March 31, 1947 (Exh. 20, pp.

133–4). March 28, 1947, this certificate was extended until September 27, 1947 (Exh. 20, p. 121). September 30, 1947, certificate Sub-No. 60TA (along with other Sub-Nos. of Riss) was extended until "finally determined" in MC–200 Sub-No. 84 (Exh. 21).

August 22, 1947, Riss filed an application for permanent authority covering several of its then temporary certificates, including Sub-No. 60TA. This application was given docket number MC–200 Sub-No. 84. After extended hearings, orders were entered denying the application. A judgment of this Court sustaining this order, 96 F.Supp. 452, was reversed (per curiam) by the Supreme Court, 341 U.S. 907, 71 S.Ct. 620, 95 L. Ed. 1345, for failure to observe proper administrative procedure. Promptly thereafter (April 26, 1951), the Commission set aside all proceedings in Sub-No. 84 and ordered all temporary authorities involved therein to be continued in force until final determination of Sub-No. 84 unless terminated earlier for good cause. Since then, there have been extensive hearings in Sub-No. 84.

The foregoing has set out the issue and the situation as to which that issue is to be determined. To summarize. The issue was whether the Riss authority to transport explosives under Sub-No. 60TA was territorially defined in the permanent certificate issued Riss in Sub-No. 46. Apparently, the Commission determined this issue from its own records, made up of applications and of orders granting the temporary and permanent certificate proceedings as to Sub-No. 46 and the temporary certificates as to transportation of explosives—which latter had eventually resulted in temporary certificate Sub-No. 60TA.

In the proceedings before the Commission, the petition of the railroads expressly identified the applications and orders of the Commission upon which they rely for their interpretation of the meaning—as to territorial operation—of Riss under Sub-No. 60TA. In its answer and motion to dismiss, Riss brings in one additional proceeding, namely

Sub-No. 84. Apparently, the applications and orders named in these pleadings were all which the parties (railroads and Riss) thought bore upon the interpretation of Sub-No. 60TA.

■ How far an administrative body—such as this Commission—can take "official notice" of its own records, proceedings and orders is not at all clear but it does have that power to some extent.[11] It would seem that this power would extend, at least, to "notice" of such orders and applications therefor as have been directly drawn to its attention in pleadings before it; which are parts of the historical development of the immediate issues before it; and which relate directly to the rights of a party to such issues. This should be particularly true where the issue is one purely of law and where reference to earlier acts of the Commission is solely to aid in resolving such issue. Here the earlier applications and orders which were considered pertinent and determinative by the Commission are identified in its report and its order of June 2, 1952. From the report and this order the Commission makes clear what it considered in reaching its decision. Such is the situation here.

■ Not only did the parties direct the attention of the Commission to the particular prior proceeding pertinent to the interpretation of Sub-No. 60TA but each side (in its pleadings) presented its views and written arguments for the interpretation it deemed correct. The only thing lacking was oral argument. As to that, no *specific* request for "oral" argument was ever asked. What Riss sought was an entire hearing (which normally would include oral argument). We conclude that the requirement of an adequate hearing before the Commission has been met.

## II. ISSUE OF CONTINUED AUTHORITY OF SUB-NO. 60TA.

Plaintiff contends that the operating authority under temporary Sub-No. 60TA continues "in full force and effect by virtue of other orders of the Commission and Section 9(b) of the Administrative Procedure Act, 5 U.S.C. § 1008(b)."

■ We are unable to agree that plaintiff has here established that the Commission failed to consider any of its orders pertinent to its decision. The temporary authority under Sub-No. 60TA was expressly related to and dependent upon temporary Sub-No. 46. Both of those temporary authorities as well as the permanent certificate Sub-No. 46 were considered by the Commission. Also, were the various extensions of Sub-No. 60TA, including that in Sub-No. 84.[12]

11. United States et al. v. Pierce Auto Freight Lines, Inc. et al., 327 U.S. 515, 529–530, 66 S.Ct. 687, 90 L.Ed. 821.

12. Commissioner Mahaffie (joined by Commissioners Lee and Knudson) dissented here on grounds stated as follows:

"Applicant's temporary authority was by an order dated September 30, 1947, continued so as to expire upon final determination of its application for permanent operating rights in No. MC–200 (Sub–No. 84). No. MC–200 (Sub–No. 84) has been heard at length. In the meantime, extensive operations under the outstanding temporary authority are being conducted. We may find that they should be continued or be curtailed. But until we do on the basis of the record now available to us we should not grant such a petition as this, unless it is required by law. As to the law applicable in the circumstances, I think the provisions of section 9 (b) of the Administrative Procedure Act on which the present order is based may still be considered controlling."

Whether it might have been advisable for the Commission to decline determination of this matter until it had acted upon a permanent certificate in the proceeding under Sub–No. 84 was, we think, a matter of discretion on the part of the Commission and not a question of power under Section 9(b) of the Administrative Procedure Act. Surely, it is not the law that the Commission cannot, after due notice and hearing, determine and prevent violation of a temporary certificate authority whenever such violation is brought to its attention by a proper complaint, as here.

■ We are unable to agree that plaintiff has established any violation of or departure from Section 9(b) of the Administrative Procedure Act.

## III. ISSUE OF RESTRICTIVE INTERPRETATION.

This contention by plaintiff has two prongs. First, is the broad position that the interpretation of the Commission is basically wrong because the authority under Sub-No. 60TA is not limited by the territorial restrictions in permanent certificate Sub-No. 46 but includes all points which it claimed to serve as successor in interest to the Monark "grandfather" rights as well as to all points covered by certain certificates formerly held by Monark in sub-numbered proceedings. The second is that, even if limited by the points in permanent Sub-No. 46, yet the Commission has further circumscribed its operations to less than those limits.

Our consideration of these two contentions is halted, at the threshold, by the state of the record upon which our determination must be based.

Our immediate concern is whether the "record" made before this Court is legally sufficient to present to us the "record" which was before the Commission and was the basis for its order of June 2, 1952. We think this *sufficiency* depends upon three successive steps: (1) is it clearly ascertainable from the order of June 2 and the accompanying report just what matters the Commission considered; (2) are such matters capable of being presented to this Court as being the record which was considered by the Commission; and (3) has enough of this record before the Commission been brought to this Court to enable us to decide the issues here.

(1) All of the matters considered essential by the Commission are clearly identified either in the order or in the report. This is done by definite ref-

erences instead of setting out. They are applications for operating authority (temporary or permanent) or orders thereon. All of them are links in the chain directly relating to Sub-No. 60TA. There is no difficulty in ascertaining and knowing just what each of these matters is. This is not an instance of consideration by the Commission of matters either unknown or unknowable, as was the situation in Ohio Bell Tel. Co. v. Public Utilities Comm. of Ohio, 301 U.S. 292, 300–305, 57 S.Ct. 724, 81 L.Ed. 1093.

(2) Whether such matters are capable of being presented to this Court as being the record which was considered by the Commission presents the problems of official notice by the Commission of its own records and of evidence in this Court of such records. We think the Commission can take such official notice. Also, we think such official notice is sufficiently manifested—for purposes of judicial examination—where (as here) such matters are definitely and clearly identified by the Commission as having been considered by it. They thus are capable of being judicially examined, *provided* they are properly brought before the examining Court.

■ How can they be properly brought before such Court? We cannot take judicial notice of these applications and orders of which the Commission took official notice. Robinson v. Baltimore & O. R. R. Co., 222 U.S. 506, 512, 32 S.Ct. 114, 56 L.Ed. 288. Such matters can be brought before the Court, as being the record before the Commission, only by being introduced as evidence (when properly identified as being the matters officially noticed by the Commission).

In examining the action of the Commission, the interest of the Court is centered in and controlled by what was considered by the Commission. In the situation here, the report and order thereon

Moreover, the Report states (p. 534):
"If there is a need for additional transportation service, it may be met by the filing of further properly supported applications for temporary or permanent authority."

have definitely pointed out the matters considered by the Commission; and, from that information, the parties can make a record in this Court which will include all that the Commission considered, even though it may here require evidence to cover matters officially noticed by the Commission.

■ (3) Orders of the Commission are presumed to be valid and the burden of overthrowing them is upon the attacker, Swift & Co. v. U. S., 343 U.S. 373, 382, 72 S.Ct. 716, 96 L.Ed. 1008; I. C. C. v. Jersey City, 322 U.S. 503, 512, 64 S.Ct. 1129, 88 L.Ed. 1420; F. P. C. v. Hope Natural Gas Co., 320 U.S. 591, 602, 64 S.Ct. 281, 88 L.Ed. 333. Such overthrow must be established on the record made in this Court as being the record before the Commission. Such burden is here upon Riss.

There remains the problem of whether the record here is sufficient for our determination of the issues here presented by Riss. In this connection, we must have in mind the three basic contentions as follows: (a) that, properly construing temporary certificate Sub-No. 60TA, Riss has not exceeded the authority thereunder; (b) that such proper construction of Sub-No. 60TA is not confined to the same territorial limits as set forth in permanent authority Sub-No. 46, but should be measured by the temporary authority of Sub-No. 46 (which included the "grandfather" claims and certain temporary certificates acquired from Monark); (c) that, even if limited by permanent authority Sub-No. 46, such limitations have been further contracted arbitrarily and capriciously by ignoring the effect of the right, under temporary Sub-No. 60TA, to transport explosives "To, from and/or between" the points covered in permanent Sub-No. 46.

Solution of each of these issues requires a consideration of permanent Sub-No. 46. The report here has at-tached to it, as an "Appendix", a detailed statement of the points from, to and between which Riss is authorized to transport dangerous explosives under its temporary Sub-No. 60TA. The report (p. 534) states:

"The appendix herein details the extent of Riss' authority to transport dangerous explosives under No. MC–200 (Sub-No. 60TA), from, to, and between the same points and in the same manner that it is authorized to transport other commodities as evidenced in [permanent] certificate No. MC–200 (Sub-No. 46)."

The report is expressly incorporated in the order of June 2, 1952 and Riss is ordered to cease and desist from "transportation of dangerous explosives in interstate or foreign commerce under No. MC–200 (Sub-No. 60TA) which are beyond the scope of the operations as specifically described in the appendix of the said report, and that Riss & Company, Inc., shall thereafter confine its operations in the transportation of dangerous explosives under the grant of temporary authority in No. MC–200 (Sub-No. 60TA) to the routes, points and territories, and in the manner set forth in the appendix to the report."

■ Permanent Sub-No. 46 is thus shown to be an all-important matter considered and acted on by the Commission. It is not in evidence in this Court. The statement in the report that the Appendix follows the provisions of permanent Sub-No. 46 is not evidence here of that fact. In this situation, we must hold that Riss has not brought here enough of the record before the Commission for us to decide, in its favor, the issues it raises here.

Riss has not sustained its burden of overthrowing the orders. The complaint must be and is

Dismissed.