**MONUMENTAL MOTOR TOURS, Inc. v.
UNITED STATES et al.**

Civ. No. 5878.

United States District Court
D. Maryland.

March 9, 1953.

--------♦--------

S. Harrison Kahn, Washington, D. C.,
Erwin Ira Ulman, Baltimore, Md., and Alfred S. Berg, New York City, for plaintiff.

Newell A. Clapp, Acting Asst. Atty.
Gen., Bernard J. Flynn, U. S. Atty., Paul
C. Wolman, Jr., Asst. U. S. Atty., Baltimore, Md., James E. Kilday, E. Riggs McConnell, Special Asst. to the Atty. Gen., of
Pa., for the United States.

Leo H. Pou, Asst. Chief Counsel, and
Edward M. Reidy, Chief Counsel, for Interstate Commerce Commission, Washington, D. C.

G. Kibby Munson, Chevy Chase, Md.,
Francis J. Ortman, James E. Wilson and
Roberts & McInnis, Washington, D. C., for
Safeway Trails, Inc., intervening defendant.

Before SOPER, Circuit Judge, and
COLEMAN and CHESNUT, District
Judges.

PER CURIAM.

This action under 28 U.S.C.A. § 1336 and related statutes was brought by Monumental Motor Tours, Inc. to set aside an order of the Interstate Commerce Commission of October 1, 1951 whereby a certificate of convenience and necessity was granted to Safeway Trails, Inc. to operate through passenger bus service between Washington, D. C. and Atlantic City, N. J.

Passenger traffic by bus between the Washington and Baltimore area and Atlantic City has heretofore involved an interchange of buses with connecting carriers at Wilmington or Philadelphia without utilizing the more direct route by U. S. Highway 40 which runs northwardly from Baltimore and crosses the Delaware River by ferry at Newcastle and runs thence directly to Atlantic City. The recently constructed Delaware River Bridge may now be used in place of the ferry. Monumental, the plaintiff herein, took the initiative in this respect on September 24, 1947 by applying for authority to institute a regular route passenger service over U. S. Highway 40 between Baltimore and Atlantic City and a number of intermediate points. Other interested carriers, including Safeway, which used the old routes, objected; but finally, on November 21, 1950, after a number of hearings, the authority sought was granted with certain restrictions.

This arrangement, however, did not provide direct service from Washington to Atlantic City and consequently Safeway in November, 1948 sought permission to extend its existing authority from the junction of U. S. Highway 40 and U.S. Highway 13 at Newcastle and thence by Highway 40 to Atlantic City. Safeway is a member of National Trailways Bus System, an association of 58 carriers, which serves the south and southwest areas of the United States and uses the facilities of Safeway to serve the link from Washington to New York, including Baltimore, Wilmington and Philadelphia as intermediate points. All of the carriers which participated in the Monumental proceeding objected; but after hearings in 1949 the examiner filed a report on April 3, 1950 recommending the grant to which the opposing carriers filed exceptions. Finally, on December 5, 1950, which was 14 days after the grant of Monumental's application, Division 5 of the Commission granted Safeway's request with the restriction that it should not serve Baltimore and other intervening points served by Monumental.

Petitions for reconsideration were filed by both Monumental and Safeway, and on October 1, 1951 the entire Commission approved the action of Division 5. On November 22, 1951 Monumental again filed a petition for reconsideration and for further hearing on several grounds, raising for the first time the contention that the whole proceeding was invalid because the examiner who conducted the hearing was not qualified under § 11 of the Administrative Procedure Act, 5 U.S.C.A. § 1010. On April 21, 1952 the Commission denied the petition for rehearing stating that so far as the qualifications of the examiner were concerned, the petition was too late because it was not made prior to the close of the hearing. The present action was commenced on June 9, 1952.

In its report the Commission reviewed the evidence submitted by Safeway in support of its application which tended to support its contention that its proposed route would be more convenient for many passengers and would not seriously interfere with the service of contributing carriers. The transportation facilities made available to passengers by other bus companies, including Monumental, were also reviewed.

Particular attention was given by the Commission to two contentions of Monumental: (1) that the restriction of Safeway's application by prohibiting the picking up of passengers in Baltimore and other towns served by Monumental was against sound public policy; and (2) that Monumental proposed to establish a system for the convenience of passengers from Washington to Atlantic City by an interchange at Baltimore with a connecting carrier, and therefore the extension of Safeway's authority was not needed.

The Commission rejected both contentions. As to the first the Commission con-

cluded that although the "closed door" type of operation was undesirable, it was expedient in the present case because of the size of the metropolitan areas of Baltimore and Washington. It is obvious that restriction upon the grant to Safeway was of advantage to Monumental.

As to the second contention the Commission said, 53 M.C.C. 321:

"As noted, Monumental offers to interchange at Baltimore, passengers traveling between Washington and Atlantic City. We do not believe that such an interline arrangement would remedy the lack of adequate service between Atlantic City and Washington, and, certainly, it would not prove satisfactory as a means of handling the large volume of traffic moving between Atlantic City and the numerous points involved herein. Also, it would not meet the requirements of the small communities represented at the hearing, which are in need of adequate bus service. At best, it would result only in substituting one traffic 'bottleneck' for another. Considering the size and importance of the cities and areas concerned and the potential volume of traffic to be moved, we believe that public convenience and necessity require the service authorized herein. A contrary finding would not be in keeping with the national transportation policy as set forth in the. Interstate Commerce Act."

In this connection the Commission made the following findings:

"We find that the present and future public convenience and necessity require operation by applicant, in interstate or foreign commerce, as a common carrier by motor vehicle of passengers and their baggage, and of express, mail, and newspapers, in the same vehicle with passengers, between Atlantic City, N. J., and the junction of U. S. Highways 13 and 40, over U. S. Highway 40, serving all intermediate points, except that such routes shall not be used in the performance of any service in respect of any passenger or other traffic moving over ap-

plicant's lines solely between Baltimore, Aberdeen, Havre · de Grace, Perryville, and Elkton, Md., on the one hand, and, on the other, Atlantic City, Pennsville, Woodstown, Pittsgroove, Elmer, Malaga, Landisville, Mays Landing, McKee City, and Pleasantville, N. J., that applicant is fit, willing, and able properly to perform such service, and to conform to the requirements of the Interstate Commerce Acts and our rules and regulations thereunder; that a certificate authorizing such operations should be granted; and that the application should be denied in all other respects."

We think that these findings were based on substantial evidence. The increased convenience of a substantially shorter route from Washington to Atlantic City is so obvious as to need no supporting testimony, but in this case convincing testimony was nevertheless adduced. The contention that this evidence was not sufficient to support the Commission's finding is too insignificant to be considered in view of the established rule that the court on judicial review will not set aside an order of the Commission if it is supported by adequate findings based on substantial evidence, taking into consideration the whole record in the case.

Monumental, however, contends that it was deprived of a fair opportunity to present to the Commission the facts bearing upon the interchange arrangement with other carriers to serve passengers from Washington which it proposes to make but has not yet established. This contention is based on the fact that Monumental's certificate was granted after the close of the hearings on Safeway's application and hence it is argued that the Safeway proceeding should have been reopened so as to consider the effect thereon of the operations which Monumental had been authorized to undertake together with its proposed interline arrangement for the accommodation of Washington passengers.

We do not think that this contention should be sustained. Monumental and the other opposing carriers participated in the

Safeway hearing and had ample opportunity to show that the authority sought by Safeway was not needed on the ground that the routes which they were operating were sufficient to accommodate the traveling public between Washington and Atlantic City. It is true that the examiner, acting in accordance with the usual procedure in cases of this sort, refused the request of Monumental to consolidate the Monumental with the Safeway proceeding; but it was known to all the parties that a recommendation in favor of Monumental's application had been made on March 21, 1949. Ultimately this proceeding culminated in a decision of the Commission in favor of Monumental on November 21, 1950; and this action was shortly followed by the decision of Division 5 of the Commission on December 5, 1950 granting Safeway's application. Manifestly, the record in the Monumental case and the final action thereon was available to the Commission when it decided the Safeway case. Indeed the president of Monumental on July 19, 1949, during the Safeway hearing, testified that Monumental had filed its application to operate between Baltimore and Atlantic City.

The president of Monumental also testified that if his company was granted a certificate to operate between Baltimore and Atlantic City it would undertake if possible to render through service between Washington, Baltimore and Atlantic City, with one of three bus lines that had authority to operate between Baltimore and Washington, that is to say, Pennsylvania Greyhound, Safeway and Oriole. However, no interchange arrangement had been made at the time and it was not known whether one of the three would be available. It was brought out that Oriole had no terminal in downtown Washington, and the president of Monumental was not certain whether it would be able to offer to Monumental enough business to make an interchange arrangement feasible.

It is therefore clear not only that the Commission had both operations in mind but was able to appraise Monumental's proposal for an interline arrangement, which, to say the least, was in an uncertain state

at the time. Clearly it would be improper for this court to reverse the Commission's order and delay the installation of a useful public service by remanding the case for further proceedings on the ground that the Commission had abused its discretion in refusing the petition of Monumental for reconsideration. Rehearings before administrative bodies are addressed to their sound discretion and only a showing of the clearest abuse of discretion would justify the interference of the Court. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 535, 66 S.Ct. 687, 90 L.Ed. 821.

We turn now to the plaintiff's contention that the case should be remanded to the Commission for a new hearing because the trial examiner was not duly qualified in accordance with the provisions of the Administrative Procedure Act, 5 U.S.C.A. § 1010. In a similar three-judge court case, Pinkett v. United States, D.C.Md., 105 F.Supp. 67, 73, we sustained that point as one of the reasons for remanding the case to the Commission; but since then the Supreme Court in United States v. L. A. Tucker Truck Lines, Inc., 344 U.S. 33, 73 S.Ct. 67, has held that such an objection must be timely made and the reasoning of the opinion of the court by Mr. Justice Jackson is, in our opinion, applicable to the instant case. In the Tucker case the objection to the examiner's qualification was not made until after filing of the action in the District Court, while in the present case, as we have above pointed out, the objection was first made on November 22, 1951 when the plaintiff here filed a petition for reconsideration of the Commission's order of October 1, 1951, in which the entire Commission approved the action of Division 5 on a petition for reconsideration filed by both Monumental and Safeway. It thus appears on the question of timeliness that the objection was not made before the Commission until after the hearings had been entirely concluded and a final decision had been made by the Commission. On the reasoning of the opinion in the Tucker case we think that the holding in this case must be that the objection was not timely made and therefore does not warrant a remand of the

case to the Commission for another hearing.

While the plaintiff here urges that the hearing examiner made some errors in the rejection of evidence, we do not understand that it contends that the examiner exhibited personal bias, favoritism or unfairness. The main contention is that on the facts this case must be distinguished from the result reached in the Tucker case because the objection was made, as the plaintiff says, before the conclusion of the administrative process although, as we have noted, it was not until after the hearings had been completed and the whole Commission had finally decided the case.

In the Tucker case the Supreme Court pointed out that in Riss & Co., Inc. v. United States, 341 U.S. 907, 71 S.Ct. 620, 95 L.Ed. 1345, the question of timeliness of the objection to the qualifications of the hearing examiner was not before the court —344 U.S. 36, 73 S.Ct. 68—

> "because in that case the examiner's appointment had been twice challenged in the administrative proceedings, once, *as it should have been, before the examiner at the hearings* and again before the Commission on a petition for rehearing. That decision established only that a litigant in such a case as this who does make such demand *at the time of hearing* is entitled to an examiner chosen as the Act prescribes."
> (Emphasis supplied.)

In emphasizing the importance of timely objection reference was made to the Commission's practice in requiring such objections to be made during the hearings and that it was said by counsel that many thousands of cases decided on that basis by the Commission would be vulnerable to attack for an indefinite period if such objections could be made for the first time after the case had been finally decided by the Commission. It was then added in the opinion, 344 U.S. 37, 73 S.Ct. 69:

> "Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over

administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."

In conclusion the opinion stated, 344 U.S. 38, 73 S.Ct. 69:

> "The question not being foreclosed by precedent, we hold that the defect in the examiner's appointment was an irregularity which would invalidate a resulting order if the Commission had overruled an appropriate objection *made during the hearings.* But it is not one which deprives the Commission of power or jurisdiction, so that even in the absence of timely objection its order should be set aside as a nullity."
> (Emphasis supplied.)

Our conclusion is that the complaint must be dismissed with taxable court costs allowed to the defendants.