DANCE FREIGHT LINES, Inc., McDuffee Motor Freight, Inc., and Central Motor Express, Inc., Plaintiffs,

v.

UNITED STATES of America, Interstate Commerce Commission, and Eagle Express Company, a corporation, Defendants.

No. 139.

United States District Court
E. D. Kentucky.
March 9, 1957.

Robert M. Pearce, Harry V. McChesney, Jr., McChesney, McChesney, Kinker & Pearce, Frankfort, Ky., for plaintiffs.

Victor R. Hansen, Asst. Atty. Gen., Antitrust Division, James E. Kilday, Charles R. Esherick, Attys., Dept. of Justice, Washington, D. C., Henry J. Cook, U. S. Atty., Lexington, Ky., for United States.

Robert W. Ginnane, Gen. Counsel, James Y. Piper, Asst. Gen. Counsel, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

Fritz Krueger, Somerset, Ky., for Eagle Exp. Co.

Before MILLER, Circuit Judge, and FORD and SWINFORD, District Judges.

FORD, District Judge.

Plaintiffs have properly invoked the jurisdiction of this district court of three judges to hear and determine their claim that the action of the Interstate Commerce Commission of February 23, 1956, granting to the defendant Eagle Express Company, Inc., a certificate of public convenience and necessity to expand its existing operation as a common carrier by motor vehicle to include a thirty mile route between Russell Springs and Campbellsville, Ky., was and is illegal and should be annulled or set aside. 28 U.S.C. §§ 2284, 2321 and 2325.

Hearings on the application of the defendant for this extension of its route, filed on January 30, 1953, as amended, identified in the record as "Sub 5 Application", were held before the Joint Board at Knoxville, Tenn., on June 16, 1953, and adjourned to and completed at Louisville, Ky., on June 24, 1953. The plaintiffs appeared at the hearings in opposition to the application. Each of the plaintiffs was a holder of a certificate authorizing operation as a motor vehicle carrier in the same general area of the extension herein sought. They asserted that their operations were adequate to meet the demands of public convenience and necessity in that area. At these hearings eleven witnesses testified in support of the application and two witnesses testified in opposition to it.

On March 16, 1954, the Joint Board served and filed its report recommending that the Commission grant the defendant Eagle's application, as amended (with an exception not here material), to which plaintiffs Dance Freight Lines and McDuffee Motor Freight seasonably filed exceptions.

On September 23, 1955, Division 1 of the Commission reported its findings in regard to the Sub 5 Application and ordered that it be granted, subject to the limitation, however, that operation over the extended route be only for transportation of textiles, textile products and materials, supplies and equipment used in the manufacture thereof, together with the provision that no intermediate points be served. These limitations were in accord with the application, as amended.

Plaintiffs' petition thereafter filed seeking further hearing and reconsideration of the order was denied.

The plaintiffs challenge the validity of the Commission's action upon the grounds, (1) there is no substantial evidence to support the Commission's conclusion that public convenience and necessity warrant the granting of this additional authority to Eagle; (2) the order of the Commission cannot stand because there was no finding that the present service is inadequate; (3) the Commission was not authorized to go outside the record to find the applicant

financially fit; and (4) the Commission abused its discretion in failing to grant plaintiffs' petition for further hearing.

Obviously, the extension of Eagle's existing route to include the thirty mile route between Russell Springs and Campbellsville had the effect of establishing direct one carrier service between Campbellsville, Ky., and Knoxville, Tenn., for inbound and outbound transportation of textile manufacturing supplies and textile manufactured products, thus reducing the distance from Campbellsville to Knoxville to 189 miles by this direct route as against the circuitous joint line service available by other carriers between Campbellsville and Knoxville with interchange at Lexington covering a distance of 281 miles, and 363 miles if the traffic moved through Louisville.

In respect to the need for this improved motor transportation in order to better serve a textile industry located at Campbellsville, the Commission made the following findings:

"* * * The manufacturer at the time of the hearing was shipping approximately 140,000 pounds a week, which volume represented about one-fourth of the anticipated productive capacity of the plant. Shipments move predominantly in less-truckload lots and 75 percent of the output moves to points in the eastern part of the United States. Only five percent is transported by motor carriers from the plant site and the balance is moved in company-owned vehicles to affiliated factories at Bowling Green and Frankfort, Ky., for subsequent movement to destination by for-hire carriers. The movement by existing carriers to eastern points with interchange generally at Cincinnati is unsatisfactory, particularly because of the time in transit which ranges from 8 to 12 days, and the frequency of occasions when the originating carrier is unable to obtain a connecting carrier willing to accept the traffic at Cincinnati. The plant is not on a rail siding and rail service is utilized only infrequently because it does not satisfactorily meet the shipper's needs in respect of time in transit. Shipper asserts a need for applicant's proposed service to enable it to utilize the Knoxville gateway in the movement of its traffic both outbound and inbound. It anticipates interchange at Knoxville will provide second-to-fifth morning delivery at eastern destinations, depending upon the distance.

"inbound, approximately 45,000 pounds of raw materials were received weekly at the time of the hearing. When the plant achieves full production it was anticipated that such shipments would approximate 180,000 pounds weekly. The raw materials originate at points in Georgia, North Carolina and South Carolina and are transported through Knoxville, Louisville, and Nashville gateways. In many instances they involve a four-line haul and require as many as 14 days in transit. Certain raw materials lose a portion of their moisture because of the lengthy transit time, which renders them unusable until the proper moisture is restored. They are also susceptible to chafing from the friction caused by the movement of the vehicle and the shifting of the load, with resultant damage and waste. The availability of a single-line carrier service over a direct route from the Knoxville gateway to the plant would benefit the manufacturer by a savings in both time and mileage, and in the curtailment of loss from chafing and dehydration. * * *

"We are inclined to agree with the joint board that a need for the proposed service has been shown. Campbellsville has a population of approximately 3500. Judging from the volume of its production the garment knitting mill there is an industry important to the community which will be directly affected by any inadequacy in its transporta-

tion service. It is, however, unfavorably located in the sense that both inbound and outbound traffic must move in interline service generally through somewhat out-of-line gateways. Applicant proposes a service which will be more direct and should materially reduce the excessive time-in-transit which the mill has frequently encountered due apparently to the service to and from the nearest interchange point. It should also result in somewhat less damage in transit. *These benefits can be achieved without material effect upon the opposing carriers.* (Italics added). Most of the shipper motor traffic has in the past moved in private vehicles for the want of satisfactory motor service. * * * "

The Commission also found that the applicant was fit, willing and able to properly perform the proposed service in conformity with the requirement of the applicable part of section 207(a) of the Interstate Commerce Act, 49 U.S.C.A. § 307(a).

The Supreme Court has frequently marked out the wide range of discretionary authority conferred by Congress upon the Interstate Commerce Commission to find the facts in a case of this character, and to decide whether, under certain circumstances, additional motor service would serve public convenience and necessity. In Interstate Commerce Commission v. Parker, 326 U.S. 60, 65, 65 S.Ct. 1490, 1492, 89 L.Ed. 2051, it is said:

"Public convenience and necessity is not defined by the statute. * * * The purpose of Congress was to leave to the Commission authoritatively to decide whether additional motor service would serve public convenience and necessity. Cf. Powell v. United States, 300 U.S. 276, 287, 57 S.Ct. 470, 476, 81 L.Ed. 643. This, of course, gives administrative discretion to the Commission, cf. McLean Trucking Co. v. United States, 321 U.S. 67, 87, 88,

64 S.Ct. 370, 380, 381, 88 L.Ed. 544, to draw its conclusion from the infinite variety of circumstances which may occur in specific instances."

In United States v. Detroit & Cleveland Navigation Co., 326 U.S. 236, 241, 66 S.Ct. 75, 77, 90 L.Ed. 38, the Court said:

" * * * The Commission is the guardian of the public interest in determining whether certificates of convenience and necessity shall be granted. For the performance of that function the Commission has been entrusted with a wide range of discretionary authority. Interstate Commerce Commission v. Parker, 326 U.S. 60, 65 S.Ct. 1490 [89 L.Ed. 2051]. Its function is not only to appraise the facts and to draw inferences from them but also to bring to bear upon the problem an expert judgment and to determine from its analysis of the total situation on which side of the controversy the public interest lies."

■ The restricted function of the court in reviewing findings of the Interstate Commerce Commission, acting within the field of its designated powers, has so frequently been emphasized by the decisions of the Supreme Court that it is no longer open to question. In United States v. Pierce Auto Freight Lines, 327 U.S. 515, 535–536, 66 S.Ct. 687, 698, 90 L.Ed. 821, the Court said:

" * * * It is not true * * * that ' * * * the courts must in a litigated case, be the arbiters of the paramount public interest.' This is rather the business of the Commission, made such by the very terms of the statute. The function of the reviewing court is much more restricted. It is limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done. Unless in some specific respect there has been prejudicial departure from requirements of the law or abuse of the Commission's discretion, the reviewing court is without authority to intervene. It

cannot substitute its own view concerning what should be done, whether with reference to competitive considerations or others, for the Commission's judgment upon matters committed to its determination, if that has support in the record and the applicable law."

Relying on a statement in Hudson Transit Lines v. United States, D. C., 82 F.Supp. 153, 157, affirmed 338 U.S. 802, 70 S.Ct. 59, 94 L.Ed. 485, and numerous holdings of the Commission, pointing out that the Courts and the Commission "have recognized inadequacy of existing facilities as a basic ingredient in the determination of public 'necessity' ", the plaintiffs contend that the order of the Commission in this case cannot stand because there was no finding that the present service was inadequate. However, in the same case the Court further said in language more apposite to the question herein presented, "This does not mean that the holder of a certificate is entitled to immunity from competition under any and all circumstances. Chesapeake & O. R. Co. v. United States, 283 U.S. 35, 51 S.Ct. 337, 75 L.Ed. 824. The introduction of a competitive service may be in the public interest where it will secure the benefits of an improved service without being unduly prejudicial to the existing service. Interstate Commerce Commission v. Parker, supra."

We are of the opinion that the plaintiffs' contention in this respect is untenable. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 531–532, 66 S.Ct. 687, 90 L.Ed. 821, and Southern Kansas Greyhound Lines v. United States, D.C., 134 F.Supp. 502, affirmed 351 U.S. 921, 76 S.Ct. 779, 100 L.Ed. 1453, and Interstate Commerce Commission v. Parker, 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051.

In respect to the Commission's finding that the applicant was financially fit and able to properly perform the service proposed, it appears from the record that in addition to the financial statement duly filed in the instant Sub 5 pro-

ceeding the Commission also took notice of the applicant's financial statement later filed with its Sub 7 Application, which was also pending before the Commission and which the Commission considered and ruled upon at the same time it decided the instant case. The plaintiffs claim that in so doing the Commission abused its discretion and that the Commission's finding of the applicant's financial fitness was thereby rendered invalid and should be set aside. We are of the opinion that this action of the Commission in thus taking notice of its own records in the Sub 7 proceeding, under the circumstances disclosed in this record, did not constitute "prejudicial departure from requirements of the law or abuse of the Commission's discretion". United States v. Pierce Auto Freight Lines, supra; Crichton v. United States, D.C., 56 F.Supp. 876, 880, affirmed 323 U.S. 684, 65 S.Ct. 559, 89 L.Ed. 554, and Riss & Co. v. United States, D.C., 117 F.Supp. 296, 303–304, affirmed 346 U.S. 890, 74 S.Ct. 221, 98 L.Ed. 393. The record in this Sub 5 proceeding contains substantial evidence of the applicant's financial ability in support of the findings in question, fortified by its financial statement filed with the application, which was not challenged or controverted at the hearing.

Plaintiffs' final contention is that the Commission abused its discretion in refusing to grant their petition and motion for further hearing. In the recent case of Eck Miller Transfer Co. v. United States, D.C.W.D.Ky., 143 F.Supp. 409, 411, the Court said:

"There must be some finality to administrative procedures, and it is well settled that the granting or denying of a petition for further hearing and reconsideration is discretionary with an administrative agency, and its decision will not be disturbed upon judicial review unless there is a clear showing of an abuse of discretion. Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420; United States v. Pierce Auto

[Freight] Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821; Monumental Motors Tours v. United States, D.C., 110 F.Supp. 929; Carolina Scenic Coach Lines v. United States, D.C., 59 F.Supp. 336, affirmed 326 U.S. 680, 66 S.Ct. 37, 90 L.Ed. 398."

We find nothing in this record to warrant the court's interference with the discretion of the Commission to control its own rehearing procedure.

The record in this case shows that the findings of fact made by the Commission are supported by substantial evidence; that in granting the certificate of public convenience and necessity here involved the Commission acted within the field of its discretionary authority, and the order of the Commission is valid and lawful.

An order will be entered dismissing the Complaint.